IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **Leda Lyons,** | : | |
| Plaintiff, | : | |
| | | Case No. 3:20-cv-00016-TPK |
| vs. | : | |
| **Andrew Saul,** | : | **Magistrate Judge Kemp** |
| **Commissioner of** | | |
| **Social Security,** | : | |
| Defendant. | : | |

**OPINION AND ORDER**

Plaintiff Leda Lyons filed this action seeking review of a final decision of the Commissioner of Social Security.  That decision, issued by the Appeals Council on November 18, 2019, denied her application for social security disability benefits.  Plaintiff filed a statement of errors on April 30, 2020 (Doc. 7) to which the Commissioner responded on July 7, 2020 (Doc. 10).  The parties have consented to final disposition of this case by a United States Magistrate Judge.  For the following reasons, the Court will **OVERRULE** Plaintiff's statement of errors and **DIRECT** the Clerk to enter judgment in favor of the Commissioner.

**I. INTRODUCTION**

Plaintiff protectively filed her application on June 2, 2016, alleging that she became disabled on June 23, 2015. After initial administrative denials of her claims, Plaintiff appeared at a hearing held before an Administrative Law Judge on May 1, 2019.  A vocational expert, Deborah A. Dutton-Lambert, also testified at the hearing.

The Administrative Law Judge issued an unfavorable decision on July 29, 2019.  In that decision, he first found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020, and that she had not engaged in substantial gainful activity since her alleged onset date.  The ALJ next concluded that Plaintiff suffered from severe impairments including obesity, degenerative disc disease of the lumbar, cervical, and thoracic spine, irritable bowel syndrome, complex regional pain syndrome, hypertension, and neuritis.  However, the ALJ also found that none of these impairments, taken singly or in combination, met the criteria for disability found in the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff could perform a reduced range of sedentary work.  He concluded that Plaintiff was capable of the

exertional demands of sedentary work but had to alternate between sitting and standing every 20 minutes while at the work station. She could not climb ladders, ropes, or scaffolds; could not kneel, crouch, or crawl; could only occasionally climb ramps and stairs and stoop; could frequently handle, finger, and feel bilaterally; had to avoid concentrated exposure to extreme cold, wetness, vibration, dust, odors, fumes, and pulmonary irritants; and had to use a cane for standing and walking.

The ALJ determined that with these limitations, Plaintiff could (based on testimony given by the vocational expert) perform her past relevant work as a telemarketer and customer service representative. As a result, he concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

In her statement of errors, Plaintiff raises a single issue. She asserts that the ALJ erred when he determined that she could handle, finger, and feel frequently, as opposed to occasionally. If the latter were true, that would lead the conclusion that she was disabled.

## II. STANDARD OF REVIEW

As this Court said in *Jeter v. Comm'r of Soc. Sec. Admin.*, 2020 WL 5587115, at *1–2 (S.D. Ohio Sept. 18, 2020),

> Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.' " *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance...." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.
>
> The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be

upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.' " *Rabbers,* 582 F.3d at 651 [quotations and citations omitted].

### III. FACTUAL BACKGROUND

The Court will begin its review of the factual background of this case by summarizing the testimony given at the administrative hearing. It will then recite the pertinent information found in the medical records.

Plaintiff, who was 61 years old at the time of the hearing, first testified that she lived in a single-story house and had no dependent children at home. She needed to use a rail to climb steps when she was not at home. She did not drive because of taking medication. She had a GED and at one time was a licensed insurance agent. Her past jobs included floor manager at an insurance agency, a telemarketer for a mortgage company, and a customer service representative for a bank. Plaintiff said she last worked in June, 2015, and had not looked for work since.

When asked why she could no longer work, Plaintiff said that she began suffering from severe back pain, which ultimately led to surgery. She used a spinal stimulator for pain and had problems with her legs. Plaintiff also suffered from tremors in both hands due to nerve damage, and pain kept her from sleeping well. Her medication affected her concentration.

Plaintiff next testified that she used a scooter when shopping. She also used a cane and a walker. She said that one of her medications, Tizanidine, helped with her tremors but she had difficulty holding on to objects and with buttons. Plaintiff said that her husband did most of the household chores. She was able to read magazines and to watch television. Attending church was difficult because she could not sit for an hour. Plaintiff was able to stand for five or ten minutes with an assistive device and sit for a half hour to 45 minutes. She could lift a gallon of milk.

The vocational expert, Ms. Dutton-Lambert, classified Plaintiff's past work as an insurance agent as light and skilled, as a floor supervisor as sedentary and skilled (as typically performed), as a telemarketer as sedentary and semi-skilled, and as a customer service representative as light and skilled (as typically performed), although Plaintiff performed that lasts job at the sedentary level. She was then asked about a hypothetical person who could do sedentary work but could stand and walk for about four hours and who had various other restrictions. Such a person could, she testified, work as a customer service representative as Plaintiff did that job, and also as a telemarketer. If the person were able to handle, finger, and feel on a frequent basis and had to use a cane or a walker, those jobs would still be available, but if fingering, handling, and feeling could be done on only an occasional basis, none of Plaintiff's past jobs could be performed.

There are only a handful of medical records that pertain to Plaintiff's ability to use her hands for handling, fingering, and feeling, which are the work-related activities upon which her claim of error focuses. As she notes, records from Sunset Family Physicians from 2016 and 2017 show that "fine tremors of both upper extremities [were] noted throughout" her examination. *See, e.g.,* Tr. 715, 718, 722, 911, 913. In fact, identical language concerning those tremors appears in most, if not all, progress notes made by the treating nurse practitioner, Cynthia Aponte. Plaintiff also reported to Nurse Aponte in September, 2016, that her tremors were "moderate to severe" and that she could no longer write legibly. (Tr. 721).

Plaintiff was examined on a consultative basis by Dr. Cunningham in August, 2017. She presented with chronic back pain and post laminectomy syndrome. She was being treated with opioid therapy and a spinal stimulator and tests had shown chronic L5-S1 radiculopathy. She said her disability was due to back pain. Dr. Cunningham observed that Plaintiff would not stand and lean forward due to pain and she demonstrated pain throughout her back. She had "intermittent hand shaking" when describing her pain. His assessment included a history of spinal surgery with limited range of motion and severe pain limiting his examination. Dr. Cunningham concluded that Plaintiff could lift 20 pounds occasionally and ten pounds frequently and that she had some limitations in her ability to perform various postural activities like stooping, kneeling, crawling, and balancing, but that she had no limitation on her ability to reach, handle, finger, and feel. He was unable to assess her ability to stand, walk, and sit, however, because Plaintiff was in too much pain for him to get an accurate examination as to those activities. (Tr. 1139-44).

State agency physicians also assessed Plaintiff's functional capacity. One of them, Dr. Keer, in an opinion dated September 28, 2017, determined that Plaintiff was limited to lifting and carrying ten pounds, could sit for six hours and stand for four in a workday, had various other restrictions, and, most significantly, had no manipulative limitations. (Tr. 134-36).

### IV. DISCUSSION

As noted, Plaintiff raises only the claim that the ALJ erred when determining her ability to handle, finger, and feel. The Court will therefore begin with the ALJ's discussion of that issue.

The ALJ began by reviewing Dr. Cunningham's consultative opinion. That opinion was assigned only partial weight because some of it appeared to be "colored by the claimant's subjective complaints of pain that day." However, the ALJ noted that Dr. Cunningham had concluded that Plaintiff had "functional limitations consistent with light exertional work." (Tr. 17). Next, the ALJ looked to the state agency reviewers' opinions (which were the only other available medical opinions on the issue of residual functional capacity) and gave great weight to that of Dr. Keer, who, unlike the other reviewer, found that Plaintiff had limitations post-surgery and that she "was able to keep working throughout the time of her impairment." (Tr. 17-18).

The ALJ also considered the extent to which Plaintiff's subjective complaints were consistent with the evidence, finding that her testimony was not fully supported by the medical and other evidence. However, he concluded that it was consistent with the record to limit her to sedentary work even though the medical opinions suggested that she was capable of performing more strenuous work activity.

The precise legal basis of Plaintiff's argument appears to be that "the ALJ failed to consider and explain his reasons for discounting [Plaintiff's] tremors ... when making his RFC determination." *Plaintiff's Statement of Errors*, Doc. 7, at 3. She relies on cases holding, generally, that an ALJ cannot simply ignore significant evidence, and that unless the ALJ mentions that evidence and explains the reasons for choosing not to credit it, there is an inadequate basis for the Court to conduct a meaningful review of the ALJ's decision.

The problem with Plaintiff's claim is that, as the Commissioner points out, no medical provider expressed the opinion that Plaintiff's tremors - no matter how they were described or characterized in the examination notes - prevented her from handling, fingering, and feeling on a frequent basis. Both Dr. Cunningham and Dr. Keer concluded that she had no manipulative limitations at all, which is a more optimistic view of Plaintiff's ability to handle, finger, and feel than the one ultimately adopted by the ALJ. Nurse Practitioner Aponte, who made the treatment notes upon which Plaintiff relies, never commented on the issue of functional capacity. The ALJ specifically credited the two medical opinions at issue, giving partial weight to that of Dr. Cunningham and great weight to that of Dr. Keer, as well as explaining why he did so. It simply cannot be argued credibly that, in light of the record and the ALJ's discussion of the medical evidence, the ALJ ignored significant evidence of a more limiting manipulative impairment or failed to provide an adequate explanation for how he came to his conclusion about Plaintiff's residual functional capacity.

It bears reminding that, as this Court has said, "Plaintiff [bears] the responsibility of not merely producing a diagnosis of an impairment, but of demonstrating correlative functional limitation." *Stevens v. Astrue*, 839 F. Supp. 2d 939, 949 (S.D. Ohio 2012). Here, no limitations in handling, fingering, and feeling were demonstrated that went beyond the opinions of Drs. Cunningham and Keer. Although Plaintiff testified to some difficulty with grasping and manipulating objects, her statement of errors does not challenge the ALJ's finding that her testimony was not entirely supported by, or consistent with, the medical evidence. Further, her subjective testimony, standing alone, is not sufficient to establish a disabling condition:

> As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler,* 742 F.2d 968, 974 (6th Cir.1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also, Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir.1997) (quoting 20 C.F.R. § 404.1529(a)).

*Bailey v. Comm'r of Soc. Sec.*, 623 F. Supp. 2d 889, 909 (W.D. Mich. 2009).  Given these principles, the Court finds no basis upon which Plaintiff's claim of error can be sustained.  It will therefore be overruled and the case will be resolved in the Commissioner's favor.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **OVERRULES** Plaintiff's statement of errors (Doc. 7) and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security.

 /s/ **Terence P. Kemp**
**Terence P. Kemp**
**United States Magistrate Judge**